IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| RONNIE L. THOMAS, AIS # 197740, | : |
|     Plaintiff, | : |
| vs. | :   CIVIL ACTION 15-0605-CG-N |
| CHIEF KENNY BRAZIL, | : |
|     Defendant. | : |

REPORT AND RECOMMENDATION

    Plaintiff Ronnie L. Thomas, an Alabama prison inmate proceeding pro se and in forma pauperis, filed a complaint under 42 U.S.C. § 1983. This action has been referred to the undersigned for appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(R). After careful review, it is recommended that pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii) that this action be dismissed because the claim for release is due to be dismissed with prejudice as frivolous and the remaining claims, if any, are due to be dismissed without prejudice for failure to state a claim upon which relief can be granted.

**I. Amended Complaint.** (Doc. 4).

    The complaint before the Court is a superseding, Court-ordered amended complaint. (Docs. 3, 4). The sole defendant is Chief Kenny Brazil of the Police Department for East Brewton, Alabama. (Doc. 1 at 1; Doc. 4 at 1). Briefly summarizing the allegations, Thomas is suing defendant Brazil for falsely imprisoning him, presently and over the preceding years; for falsely arresting him over the years; and for harassing him. (Doc. 4 at 4). For these actions, Thomas wants his freedom back, and he adds "lost

[his] job, pain an[d] suffer[ing][,] lost time with my family, to get my life back, so [I] can be able to live in p[ea]ce." (Doc. 4 at 7).

Instead of completing the complaint form in the routine manner, Thomas provides a narrative of his claims against defendant Brazil and introduces his claims by stating that he "was arrested thr[ough] the years of 2000 for false charges by East Brewton A[labama] Police Department under the Chief Kenny Brazil['s] order, a crook[ed] officer." (Doc. 4 at 8). In the narrative, Thomas makes references to individuals with pronouns, such as "he," and describes action taken without identifying the actor. When it appears that he is describing defendant Brazil, the Court will liberally construe the allegation and refer to defendant Brazil.

For his first claim, Thomas alleges that he was picked up and arrested on a charge for theft of property. (Id.). On this charge, he spent "some months" in jail during which he lost his job. (Id.). When he went to court, the judge dismissed his case because the judge found "they were lying." (Id.).

Thomas's second claim is for being arrested for first-degree arson and again being put in jail, during which time he again lost his job. (Id.). When he went to court, the judge found "they were lying" so the case was dismissed. (Id.).[1]

In his third claim, Thomas claims that upon leaving the store, defendant Brazil stopped him and told him there was a warrant for his arrest for missing court, which

---

[1] In a letter to the Court, Thomas states that the grand jury no-billed the arson charge (DC10-0822) in the winter of 2011. (Doc. 5)
[2] In subsequent letters to the Court, Thomas identified this person as the lady he was going to marry who had a disabled son. (Doc. 11 at 1; Doc. 13 at 2). Thomas is warned that "allegations that are contradicted by other allegations" may constitute a ground for the dismissal of his action as frivolous. Battle v. Central State Hosp., 898 F.2d 126, 127 n.3 (11th Cir. 1990).
[3] In Thomas's letters he states that he was sentenced to 155 months, which was suspended, if he completed 2 years of community corrections and 60 months of

Thomas contends was not true. (Id.). Defendant Brazil took him to jail where he stayed for "some months" until he went to court in East Brewton where the judge, upon seeing him, released him. (Id.). When he was returned to the county jail to be released, an officer from the "sheriff side" said that he could not be released because a note stapled to his release papers from the East Brewton Police Department said he needed to serve thirty more days. (Id.). Before Thomas was taken to jail, he was asked if he had any money in his pocket or if he was paid that day. (Id. at 8-9). He responded that he would not be paid until Friday. (Id. at 9). Thereupon, defendant Brazil ordered an officer to lock up Thomas. (Id.). Even though Thomas was to have been released on November 11, 2014, he was not released until December 6, 2014. (Id.).

For his fourth claim, Thomas alleges that he was forced to leave his wife and disabled son. (Id.).² Thomas advises there was problem, which he did not describe, that he tried to stop by going to the landlord, who did not do anything but tell "the people not to call us neggar any more" and then called the police. (Id.). When the police arrived, they told the blacks to go into their apartments so they could walk the white family to theirs. (Id.). After this was done, everything died down that day. (Id.). The next day Thomas was standing outside the apartment with a friend when the white family's son came outside, saw them, and went inside to tell "his family that the neggars is out again." (Id.). To keep the problem down, Thomas went inside and the friend returned to his own apartment. (Id.). After about thirty minutes, when Thomas was feeding his son, defendant Brazil knocked, came in, and told him to get his stuff, to

---

² In subsequent letters to the Court, Thomas identified this person as the lady he was going to marry who had a disabled son. (Doc. 11 at 1; Doc. 13 at 2). Thomas is warned that "allegations that are contradicted by other allegations" may constitute a ground for the dismissal of his action as frivolous. Battle v. Central State Hosp., 898 F.2d 126, 127 n.3 (11th Cir. 1990).

leave, and not to come back.  (Id.).

In the fifth claim Thomas alleges that after a couple of weeks, a friend invited him to a party, which he attended but stayed next door and did not come on the property.  (Id.).  Defendant Brazil drove up, saw him standing near the property, and called another officer.  (Id.).  When defendant Brazil called Thomas, he went over to defendant Brazil.  (Id.).  When defendant Brazil asked him what had he done, he responded that he had not done anything.  (Id.).  When the officer asked defendant Brazil how to charge Thomas, defendant Brazil told the officer just to take Thomas to jail and he would think of something.  (Id.).

The next day when defendant Brazil came to the jail, he charged Thomas with public intoxication, fleeing from an officer, and trespassing.  (Id. at 10).  Thomas was placed on "judicial[] corrections" for one year, which he appealed.  (Id.).  Because he was out of town working on the court date, his conviction from the East Brewton Court stands.  (Id.).

For the sixth claim, Thomas complains that he is presently locked up on a false third-degree burglary charge.  (Id.).  One Saturday when he finished work, he went to friends' house and partied.  (Id.).  After spending the night, he began walking home on Sunday morning when he passed D.J. Paint and Body Shop, where he previously had worked.  (Id.).  At that time, another worker drove up in a church van, walked to the back of the shop, observed the lock was off the back door, and called D.J.  (Id.).  Thomas continued walking.  (Id.).  After work the next evening, he went back to his friends' house and drank until after dark.  (Id.).  He started walking home but could not make it, so he got into one of the old pick-up trucks to sleep it off.  (Id.).  The East Brewton Police and D.J. came up, and after D.J. went inside to look around, they stood by the

truck that Thomas was in. (Id.). When Thomas rose up, an officer saw him. (Id.). The officers got him out of the truck and took him to the police car. (Id.). An officer called defendant Brazil who, upon learning the person was Thomas, told the officer to bring Thomas to the jail and he would think of a charge. (Id.).

Thomas was charged and convicted of third-degree burglary and sentenced to community corrections for two years and to sixty months of supervised probation. (Id. at 11).³ He appealed because his court-appointed attorney told him that was the only plea deal the state had for him. (Id.). For nine months while he was in community corrections, he worked in town and out of town and did not miss a meeting or payment. (Id.). He told the community corrections officer about his work, who, in turn, told him to call when the job took him out of town. (Id.). Thomas did that and left messages on the answering machine if he could not get in touch with the officer. (Id.). The officer said that he would let the judge know, but the officer did not, and the judge placed a first-degree escape charge on him. (Id.). Even though he did not miss paying, he was locked up and sent to Kilby Correctional Facility to serve the remainder of his community corrections sentence. (Id.).

After filing the amended complaint, Thomas sent letters to the Court. (Docs. 11, 12). Contained in these letters is additional information, particularly with regard to the sixth claim. Thomas states that he was arrested for third-degree burglary on October 1, 2012, and he stayed in jail until September 11, 2014, when he went to court and was sentenced. (Doc. 11 at 1-3; Doc. 12 at 2-3). The arrest report states that he broke into the shop and stole a cup of change, two candy bars, and cleaning supplies. (Doc. 12 at 2).

---

3  In Thomas's letters he states that he was sentenced to 155 months, which was suspended, if he completed 2 years of community corrections and 60 months of supervised probation. (Doc. 11 at 2; Doc. 13 at 4).

5

Thomas maintains that he did not steal anything as his unemployment card in his wallet had $1800 on it. (Id.).

After Thomas was arrested on the first-degree escape charge on March 23, 2015, he was given a plea bargain, which called for the dismissal of the escape charge and him serving the remainder of his two-year community corrections sentence and being given jail credit. (Doc. 11 at 2; Doc. 12 at 3). He disputes the amount of jail credit he is receiving, which is 58 days, because he was in jail from October 1, 2012 and September 11, 2014. (Doc. 11 at 2; Doc. 12 at 3).

## II. Standards of Review Under 28 U.S.C. § 1915(e)(2)(B).

Because Thomas is proceeding in forma pauperis, the Court is reviewing the amended complaint (Doc. 4) under 28 U.S.C. § 1915(e)(2)(B). Under § 1915(e)(2)(B)(i), a claim may be dismissed as "frivolous where it lacks an arguable basis in law or fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831-32, 104 L.Ed.2d 338 (1989).[4] A claim is frivolous as a matter of law where, inter alia, the defendants are immune from suit, id. at 327, 109 S.Ct. at 1833, or the claim seeks to enforce a right that clearly does not exist. Id.

Moreover, a complaint may be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted. Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997). To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations must show plausibility. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 557, 127 S.Ct. 1955, 1966, 167 L.Ed.2d 929 (2007). "A claim has

---

[4] Neitzke's interpretation of 28 U.S.C. § 1915(d) is applied to § 1915(d)'s superseding statute, 28 U.S.C. § 1915(e)(2)(B). Bilal v. Driver, 251 F.3d 1346,1348-49 (11th Cir.), cert. denied, 534 U.S. 1044 (2001).

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and must be a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'"  Twombly, 550 U.S. at 555, 557, 127 S.Ct. at 1965, 1966 (second brackets in original).  But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949.  Furthermore, when a successful affirmative defense, such as a statute of limitations, appears on the face of a complaint, dismissal for failure to state a claim is also warranted.  Jones v. Bock, 549 U.S. 199, 215, 127 S.Ct. 910, 920-21, 166 L.Ed.2d 798 (2007).

When considering a pro se litigant's allegations, a court gives them a liberal construction holding them to a more lenient standard than those of an attorney.  Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 595-596, 30 L.Ed.2d 652 (1972).  The court, however, does not have "license . . . to rewrite an otherwise deficient pleading [by a pro se litigant] in order to sustain an action."  GJR Investments v. County of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998), overruled on other grounds by Randall v. Scott, 610 F.3d 701, 710 (11th Cir. 2010) (relying on Iqbal, 556 U.S. 662, 129 S.Ct. 1937). Furthermore, the court treats as true factual allegations, but it does not treat as true conclusory assertions or a recitation of a cause of action's elements.  Iqbal, 556 U.S. at 681, 129 S.Ct. at 1951.  In addition, a pro se litigant "is subject to the relevant law and rules of court including the Federal Rules of Civil Procedure."  Moon v. Newsome, 863 F.2d 835, 837 (11th Cir.), cert. denied, 493 U.S. 863 (1989).

**III. Discussion.**

    **A. Unavailability of Release in a § 1983 Action.**

In the amended complaint, Thomas described several encounters he had with defendant Brazil prior to the encounters that led to his present incarceration from which he seeks his release. That is, his present incarceration is based on being arrested for third-degree burglary on October 1, 2012, being convicted on September 11, 2014 for third-degree burglary, and being sentenced to community corrections for two years and to supervised probation for sixty months. (Doc. 4 at 11; Doc. 11 at 1-3; Doc. 12 at 2-3). Then, as a result of his non-compliance with this sentence, it was revoked which has caused him to serve the remainder of his community custody sentence at Kilby Correctional Facility. (Doc. 11 at 4). (The Court deduces that Thomas's prior encounters with defendant Brazil occurred before October 1, 2012, except for his third claim in which he relates that he was to be released on November 11, 2014, but he was not released until December 6, 2014. (Doc. 4 at 9)). Important to the Court's decision is the fact that Thomas seeks his freedom, that is, his release, and is not complaining about a physical injury.

The longstanding rule of law holds that release from incarceration cannot be gained in § 1983 action. Preiser v. Rodriguez, 411 U.S. 475, 500, 93 S.Ct. 1827, 1841, 36 L.Ed.2d 439 (1973). "[H]abeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release." Heck v. Humphrey, 512 U.S. 477, 481, 114 S.Ct. 2364, 2369, 129 L.Ed.2d 383 (1994). Therefore, in a § 1983 action "injunctive and declaratory relief claims which are in the nature of habeas corpus claims—i.e., claims which challenge the validity of the claimant's conviction or sentence and seek release—are simply not cognizable under §

1983." Abella v. Rubino, 63 F.3d 1063, 1066 (11th Cir. 1995).

The Supreme Court in Wilkinson v. Dotson, 544 U.S. 74, 125 S.Ct. 1242, 161 L.Ed.2d 253 (2005), discussed the relationship between the § 1983 and habeas remedies, when it recounted:

> Throughout the legal journey from Preiser to Balisok, the Court has focused on the need to ensure that state prisoners use only habeas corpus (or similar state) remedies when they seek to invalidate the duration of their confinement—either directly through an injunction compelling speedier release or indirectly through a judicial determination that necessarily implies the unlawfulness of the State's custody. Thus, Preiser found an implied exception to § 1983's coverage where the claim seeks—not where it simply "relates to"—"core" habeas corpus relief, i.e., where a state prisoner requests present or future release. Cf. post, at 1253 (KENNEDY, J., dissenting) (arguing that Preiser covers challenges that "relate ... to" the duration of confinement). Wolff makes clear that § 1983 remains available for procedural challenges where success in the action would not necessarily spell immediate or speedier release for the prisoner. Heck specifies that a prisoner cannot use § 1983 to obtain damages where success would necessarily imply the unlawfulness of a (not previously invalidated) conviction or sentence.

Id. at 81, 125 S.Ct. at 1247. Thus, a challenge to Thomas's conviction, sentence, and revocation[5] on which he seeks an immediate release or a speedier release must proceed as a habeas action because this type of relief is unavailable in a § 1983 action. Mitschell v. Donald, 213 F. App'x 920 923 (11th Cir. 2007) (unpublished) (holding the use of § 1983 to obtain immediate release from incarceration was improper because the request to be released and placed on probation challenges the duration of his sentence); Abella,

---

[5] In Thomas's letters to the Court, he disputes the amount of jail credit he is receiving, which is 58 days, because he was in jail from October 1, 2012 and September 11, 2014. (Doc. 11 at 2; Doc. 12 at 3). If Thomas had raised a claim for the calculation of his jail credit in the amended complaint, such a claim would receive the same treatment that his claims based on his conviction, sentence, and revocation are receiving as the claims are of the same nature. That is, Thomas is claiming he is entitled to more than the 58 days of jail credit, which is a challenge to the execution of his sentence and a request for a speedier release.

63 F.3d at 1066 (finding an inmate's request for injunctive and declaratory relief based on a conspiracy to falsely convict him on fabricated evidence should be brought as a habeas); Lee v. Wood, Civil Action No. 04-00710-BH-B, 2007 WL 2460756, at *4 (S.D. Ala. 2007) (unpublished) (finding a challenge to probation revocation proceedings for which release was sought was not recognized under § 1983 and should be brought as a habeas proceeding); cf. Muhammad v. Close, 540 U.S. 749, 754, 124 S.Ct. 1303, 1306, 158 L.Ed.2d 32 (2004) (finding the § 1983 action should proceed because the action could not "be construed as seeking a judgment at odds with his conviction or with the State's calculation of time to be served in accordance with the underlying sentence. That is, he raised no claim on which habeas relief could have been granted on any recognized theory"). If by filing this action, Thomas is only seeking to be released, this action is due to be dismissed with prejudice as frivolous because it lacks an arguable basis in law. Neitzke, 490 U.S. at 325, 109 S.Ct. at 1831-32.

   B. **Additional Language in Ad Damnum Clause.**

      1. **Heck v. Humphrey Precludes Claims for Damages.**

Thomas's request for relief contains additional verbiage, the meaning of which is not clear. Immediately following his request to be given his "freedom back," Thomas writes "lost my job, pain an[d] suffer[ing][,] lost time with my family, to get my life back, so [I] can be able to live in p[ea]ce." (Doc. 4 at 7). If Thomas is making these statements for the purpose of describing what his incarceration has cost him and therefore he wants his freedom then these statements do not need to be addressed further. However, if one of these statements could be construed as a request for damages, then the Court must also screen a claim for damages even though the Court observes that no amount of damages was requested.

If Thomas is seeking monetary damages because his conviction, sentence, or revocation is unconstitutional, "or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," he must demonstrate that "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." Heck v. Humphrey, 512 U.S. 477, 486-87, 114 S.Ct. 2364, 2372, 129 L.Ed.2d 383 (1994). If it cannot be shown that the conviction or sentence has been so invalidated, the claim for damages is not recognized under § 1983. Id. at 487, 114 S.Ct. at 2372. However, a claim would not be subject to dismissal if it were shown that the conviction or sentence has been invalidated or if the claim would not demonstrate the invalidity of the conviction or sentence if a favorable judgment were entered, "in absence of some other bar to the suit." Id. at 487, 114 S.Ct. at 2371-72.

In light of Thomas requesting to have his freedom and specifying that the violation occurred in 2013 (Doc. 4 at 4), the Court is focusing on the incidents that brought about his present incarceration, which are his third-degree burglary conviction, its sentence, and the revocation of the community corrections portion of his sentence. In the amended complaint, he does not show that invalidation has occurred with respect to his conviction, sentence, and revocation. His allegations do not elaborate on the reasons for their unconstitutionality, except that he is not guilty of the burglary as he did not need to steal, and he was compliant with making payments and checking in with the officer, but the officer did not give this information to the court. Despite the lack of development to show that these claims are plausible, it is readily apparent that a favorable ruling would have the effect of undermining his conviction, sentence, and

revocation. Therefore, Thomas cannot proceed on such damages claims in this § 1983 action. Any damages claims are due to be dismissed without prejudice for failure to state a claim upon which can be granted.

### 2. Section 1997e(e) Provides an Alternate Basis for Dismissal of Damages Claims.

With respect to the damages claims, 42 U.S.C. § 1997e(e) would provide an alternate basis on which to preclude claims for compensatory or punitive damages from proceeding. Section 1997e(e) provides: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18)." 42 U.S.C. § 1997e(e).

Section 1997e(e) was enacted by Congress "[i]n an effort to stem the flood of prisoner lawsuits in federal court[.]" Harris v. Garner, 216 F.3d 970, 971 (11th Cir.), cert. denied, 532 U.S. 1065 (2001). This section is "[r]ead as a limitation on recovery only[.]" Harris v. Garner, 190 F.3d 1279, 1288 (11th Cir. 1999) (finding that the Constitution does not "mandate[ ] a tort damages remedy for every claimed constitutional violation"), opinion vacated by 197 F.3d 1059, opinion reinstated in part by 216 F.3d 970 (11th Cir. 2000). By enacting this section, Congress chose to "preclude[ ] some actions for money damages[,]" id. at 1283, and "to enforce prisoners' constitutional rights through suits for declaratory and injunctive relief[,]" id. at 1289, and nominal damages. Brooks v. Warden, 800 F. 3d 1295, 1307-09 (11th Cir. 2015).

Section 1997e(e) applies "only to lawsuits involving (1) Federal civil actions (2) brought by a prisoner (3) for mental or emotional injury (4) suffered while in custody." Napier v. Preslicka, 314 F.3d 528, 532 (11th Cir.), cert. denied, 540 U.S. 1112 (2004). The statute encompasses all claims, including constitutional claims, with no exceptions

being provided.  <u>Al-Amin v. Smith</u>, 637 F.3d 1192, 1197 (11th Cir. 2011) (holding no distinction is made between "constitutional claims frequently accompanied by physical injury (e.g., Eighth Amendment violations) and those rarely accompanied by physical injury (e.g., First Amendment violations)[;]" all constitutional claims are treated equally).  "In order to avoid dismissal under § 1997e(e), a prisoner's claims for emotional or mental injury must be accompanied by allegations of physical injuries that are greater than <u>de</u> <u>minimis</u>."  <u>Mitchell v. Brown & Williamson Tobacco Corp.</u>, 294 F.3d 1309, 1312–13 (11th Cir. 2002).

In the present action, no allegations of a physical injury are present, and a liberal construction of the request for relief suggests that if the language can be construed as a request for damages, the request is for compensatory damages.  That is, Thomas wants to be compensated for the loss of his job, the companionship of his family, and pain and suffering.  In the absence of a physical injury, § 1997e(e) prohibits Thomas from recovering compensatory damages for these consequences of his conviction, sentence, and revocation.  Bearing these things in mind, 42 U.S.C. § 1997e(e) is clearly an alternate basis on which to dismiss without prejudice any damages claims that Thomas intended to be advancing.  <u>See</u> <u>Napier</u>, 314 F.3d at 532 (holding a dismissal pursuant to § 1997e(e) shall be without prejudice).

**C.  Claims for Harassment.**

Because Thomas's request for relief correlates with his present incarceration, the Court has addressed the claims that are alleged to be responsible for his present incarceration.  However, Thomas includes other encounters with law enforcement in his allegations, which appears to be done for the purpose of advancing a harassment claim, as he labeled this action as one for harassment, among other things.  A claim of

harassment cannot "independently support a cause of action under § 1983. . . . [H]arassment will only state a claim under § 1983 if it is carried out in order to induce someone to give up a substantive constitutional right or to deprive a person of a constitutional right." Mullinax v. McElhenney, 672 F. Supp. 1449, 1452, (N.D. Ga. 1987); see Bart v. Telford, 677 F.2d 622, 625 (7th Cir. 1982) (Posner, C.J.) (reversing the dismissal of a First Amendment claim based on petty harassments to determine if whether the claim "reached the threshold of actionability under section 1983"); Hyath v. City of Decatur, No. Civ.A.1:04CV1135-JEC, 2008 WL 825779, at * 4 (N.D. Ga. 2006) (Carnes, J.) (finding the defendant "is only liable to plaintiff if the alleged harassment was severe and pervasive, and thus deprived plaintiff of a constitutional right"); see generally Post v. City of Fort Lauderdale, 7 F.3d 1552, 1560 (11th Cir.) (finding the defendants were "entitled to qualified immunity because no case clearly establishes that issuing three arguably justified citations and then making one arguably justified arrest over a period of about 30 days violates due process"), modified, 14 F.3d 583 (11th Cir. 1994). Cf. Bennett v. Hendrix, 423 F.3d 1247, 1255 (11th Cir. 2005)  ("We conclude that the law was clearly established at the time of the defendants' alleged actions that retaliation against private citizens for exercising their First Amendment rights was actionable."), cert. denied, 549 U.S. 809 (2006).  Considering the nature of Thomas's allegations in this action, if he were to allege and prove the deprivation of a constitutional right as a result of harassment, his claim would be subject to review under Preiser, Heck, and § 1997e(e), supra.

In the event that Thomas wants each prior encounter with defendant Brazil to be addressed, Thomas is advised that the law requires that a § 1983 action be brought within two years of a claim accruing.  Lufkin v. McCallum, 956 F.2d 1104, 1105, 1108 n.2

(11th Cir.), cert. denied, 506 U.S. 917 (1992) (holding the statute of limitations for a § 1983 action filed in Alabama is two years). And due to the brief manner in which Thomas pled these other incidents, there is no way to determine if a claim is prohibited by the statute of limitations. Thomas only claims that he was arrested and the charges were dismissed. To have shown that his arrests violated the Constitution, he needed to have shown through specific facts that probable cause was lacking for each arrest. Jones v. Cannon, 164 F.3d 1271, 1283 (11th Cir. 1999) ("An arrest without probable cause is unconstitutional, but officers who make such an arrest are entitled to qualified immunity if there was arguable probable cause for the arrest."). This would be the minimum showing required for his allegations in order to proceed.

Accordingly, Thomas has not stated a plausible claim for harassment and has not shown that these other incidents legal proceedings are connected to his present incarceration.

**IV. Conclusion.**

Based upon the foregoing reasons, it is recommended that this action be dismissed without prejudice, prior to service of process, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii) that this action be dismissed because the claim for release is due to be dismissed with prejudice as frivolous and the remaining claims, if any, are due to be dismissed without prejudice for failure to state a claim upon which relief can be granted.

<u>**NOTICE OF RIGHT TO FILE OBJECTIONS**</u>

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific

written objections with the Clerk of this Court.  See 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D. Ala. Gen.LR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this 7th day of June, 2016.

/s/ Katherine P. Nelson
_____
UNITED STATES MAGISTRATE JUDGE